## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| NELLE HARPER LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 1:13-cv-490 |
| | ) |
| MONROE COUNTY HERITAGE | ) |
| MUSEUM, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

The Complaint of Plaintiff NELLE HARPER LEE against Defendant

MONROE COUNTY HERITAGE MUSEUM, INC. (the "Museum"), alleges as

follows:

## PROLOGUE

1.      Nelle Harper Lee, known to the world under the professional name,

Harper Lee, wrote the world-famous and beloved novel *To Kill A Mockingbird*.

She wove a story of racial injustice, class conflict and the destruction of innocence

against the backdrop of the fictional Maycomb County, Alabama in the Jim Crow

era.  Although the story was set in the 1930's, her realistic and highly critical

portrayal of Maycomb's residents shone a harsh light on the attitudes of communities that were the focal point of the civil rights movement in the 1960's.

2.      Monroeville (the county seat of Monroe County, Alabama) is Harper Lee's home.  The town's desire to capitalize upon the fame of *To Kill A Mockingbird* is unmistakable: Monroeville's town logo features an image of a mockingbird and the cupola of the Old County Courthouse, which was the setting for the dramatic trial in *To Kill A Mockingbird.*

3.      The lightly-populated, rural county is also home to the Museum.  The Museum seeks to profit from the unauthorized use of the protected names and trademarks of "Harper Lee" and "To Kill A Mockingbird."  It is a substantial business that generated over $500,000 in revenue for 2011, the last year for which figures are available.

4.      The Museum claims repeatedly in its IRS Form 990 that its mission is "historical" (referring to "historical buildings", "historical interest", "historical presentations" and "historical events"), but its actual work does not touch upon history.  Rather, its primary mission is to trade upon the fictional story, settings and characters that Harper Lee created in *To Kill A Mockingbird,* and Harper Lee's own renown as one of the nation's most celebrated authors.

5.      Historical facts belong to the world, but fiction and trademarks are protected by law.  The Museum has steadfastly ignored Ms. Lee's demands that it

cease and desist from its illegal action. The Museum has even attempted to block Ms. Lee's federal registration of her trademark in TO KILL A MOCKINGBIRD. Ms. Lee has no choice but to seek relief in this court.

## NATURE OF THE ACTION

6.     This is an action to redress violations of the federal trademark infringement laws and federal law of unfair competition (15 U.S.C. § 1125(a)), federal trademark anti-dilution law (15 U.S.C. § 1125(c)), federal anticybersquatting law (15 U.S.C.§ 1125(d)), state trademark and anti-dilution law (Ala. Code § 8-12-6 et seq.), common law unfair competition, common law trademark infringement, unjust enrichment and common law violation of the right of publicity, all as the result of willful and unauthorized use by Defendant of Plaintiff's trademark and professional name, as more fully set forth hereinafter.

7.     Plaintiff seeks permanent injunctive relief restraining infringement by Defendant of Plaintiff's trademark and professional name, damages as the direct and proximate result thereof, and related relief.

## THE PARTIES

8.     Plaintiff Nelle Harper Lee is a natural person who resides in Monroeville, Alabama.

9.     Upon information and belief, Defendant Monroe County Heritage Museum, Inc. is an Alabama corporation, with its principal place of business located at 31 North Alabama Ave., Monroeville, Alabama.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 U.S.C. §§ 1331 and 1338, as those claims arise under 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(c) and 15 U.S.C. § 1125(d); and supplemental jurisdiction over the related state claims under 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction over the Defendant because, upon information and belief, Defendant's principal place of business is in the State of Alabama, Defendant has, either directly or through its agents, transacted business within the State of Alabama and within this judicial district, as more specifically set forth below, and Defendant expected or should reasonably have expected its acts to have consequence in the State of Alabama and within this judicial district.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as Defendant is doing business in this judicial district and therefore may be found in this district, a substantial part of the events giving rise to the claims alleged herein occurred in this district, and the infringement and dilution of Plaintiff's mark occurred in this judicial district.

## FACTS COMMON TO ALL CLAIMS

**A.   History of the Plaintiff's Work, the Plaintiff's Name and the TO
KILL A MOCKINGBIRD Mark.**

13.    Plaintiff is world-famous author.  She published in 1960 the novel

entitled "To Kill A Mockingbird" under the name "Harper Lee."  She is known to

the public by the name "Harper Lee."

14.    "To Kill A Mockingbird" was an immediate literary success.  Ms. Lee

was awarded the Pulitzer Prize in Fiction for the book.  It has sold over 30 million

copies in the English language alone.  It continues to sell over a million copies a

year and has been translated into over 25 languages.  It has never been out of print.

It is on the required reading lists of over three-quarters of the high schools in the

United States.  According to the scholar Mary McDonagh Murphy, "No other

twentieth-century American novel is more widely read."  The Defendant's own

website notes that it is "one of the world's best loved novels."

15.    Ms. Lee herself has garnered considerable fame under the name

"Harper Lee."  In 2007 she was awarded our nation's highest civilian honor, the

Presidential Medal of Freedom.  The citation for the award states:

> Harper Lee's beautiful book is a meditation on family, human
> complexity, and some of the great themes of American life.  At a
> critical moment in our history, To Kill A Mockingbird helped focus
> the Nation on the turbulent struggle for equality.  The novel became
> an instant American classic and earned her a Pulitzer Prize.  Nearly

half a century after its publication, her work continues to captivate
new readers who encounter its compelling power for the first time.
The United States honors Harper Lee for her outstanding contribution
to the great literary tradition of America.

16.     Pursuant to a license granted by Harper Lee, the novel was adapted
into a motion picture starring Gregory Peck as the story's hero, Atticus Finch.  Mr.
Peck won the Academy Award for Best Actor for his performance, and the
American Film Institute called Atticus Finch the greatest movie hero of the 20th
century.  The film won three Oscars and was nominated for five others.

17.     Pursuant to a license granted by Harper Lee, the novel was adapted
into a stage play by Christopher Sergel.

18.     "To Kill A Mockingbird" is a work of fiction.  It is set in the fictional
Maycomb County, which was inspired by Ms. Lee's home of Monroe County,
Alabama.  Nonetheless, the setting, plot and characters are products of Ms. Lee's
imagination.

19.     Ms. Lee owns the marks and names "TO KILL A MOCKINGBIRD"
and "HARPER LEE."  Ms. Lee first began to use TO KILL A MOCKINGBIRD
and HARPER LEE in connection with the business of selling books in July 1960.
The TO KILL A MOCKINGBIRD mark is registered in the State of Alabama for
"books" in State Classification #25 under Registration Number 113-341.

20.     Plaintiff has extensively used, advertised and promoted the TO KILL
A MOCKINGBIRD and HARPER LEE marks and names throughout Alabama

6

and all 50 states in which the Plaintiff and her licensees conduct their business. Plaintiff and her licensees have spent substantial sums of money in advertising and promotion since its publication.

21.    Plaintiff conducts her business both in interstate commerce and within the state of Alabama.

**B.    The Nature and Quality of Plaintiff's TO KILL A MOCKINGBIRD and HARPER LEE Marks and Names.**

22.    The Plaintiff engages in substantially exclusive use of the TO KILL A MOCKINGBIRD and HARPER LEE marks and names.  To Plaintiff's knowledge, neither TO KILL A MOCKINGBIRD nor HARPER LEE is used anywhere in the country by any persons other than the Plaintiff and her licensees in the business of books or any other field, except for the Defendant's infringing and diluting use.

23.    The TO KILL A MOCKINGBIRD mark is well-recognized within the relevant public and trade groups that constitute the market for books.

24.    The TO KILL A MOCKINGBIRD mark has acquired distinctiveness and secondary meaning when used in connection with books because prospective purchasers are likely to perceive it as a designation that identifies the business of a particular person.

25.    As a result of its use, advertisement and promotion, the TO KILL A MOCKINGBIRD mark has become highly distinctive and has become well and favorably known throughout the nation as identifying the Plaintiff and her

7

business, and the mark has resultantly acquired fame within the field of books. The TO KILL A MOCKINGBIRD mark has developed an exceedingly valuable goodwill.

26.     The HARPER LEE mark and name is well-recognized within the relevant public and trade groups that constitute the market for books.

27.     The HARPER LEE mark and name has acquired distinctiveness and secondary meaning when used in connection with books because prospective purchasers are likely to perceive it as a designation that identifies the business of a particular person.

28.     As a result of its advertisement and promotion, the HARPER LEE mark and name has become highly distinctive and has become well and favorably known throughout the nation as identifying the Plaintiff and her business, and the mark has resultantly acquired fame within the field of books.  The HARPER LEE mark and name has developed an exceedingly valuable goodwill.

### C.     Defendant's Use of Infringing Marks.

29.     Defendant Museum includes exhibits, a gift shop, venue rentals for private and public events and a website. Defendant promotes its business by touting the association between Monroe County and the Old Courthouse Museum, on the one hand, and Nelle Harper Lee and the novel and film of "To Kill A Mockingbird" on the other.

30.     Upon information and belief, Defendant also sells goods by means of a website featuring an association with the HARPER LEE mark and name.

31.     Upon information and belief, Defendant has registered the domain name "tokillamockingbird.com" with Network Solutions, Inc. and operates its primary website at http://www.tokillamockingbird.com.

32.     Defendant willfully and intentionally sells its goods and services by unauthorized use of the TO KILL A MOCKINGBIRD and HARPER LEE marks and names.  Those uses include, but are not limited to the following:

"Visit us and discover the heart of *To Kill A Mockingbird*".

"Today, fans of the classic novel come to the courthouse from all over the world because it is the most tangible connection to the book's fictional Maycomb."

"Restored to its 1930s appearance, our courtroom is the model for **Harper Lee**'s fictional courtroom settings in **To Kill A Mockingbird**. It's now one of the most recognized courtrooms in America because of the popular film version of the book."

33.     Defendant further uses the words, terms and name "TO KILL A MOCKINGBIRD" in connection with the offering for sale and the sale of its goods and services by including them on clothing for men and women (including aprons, t-shirts and fleece vests), clothing for children (including onesies and t-shirts), tote bags, hand towels, flour sack towels, soaps, wine bags, linen napkins, keychains, magnets, memo pads, ornaments, glass ware, plastic/acrylic tumbler glasses, seat

cushions, car decals, coasters, bookmarks, teacher's instructional guides, fans, postcards and beverage huggers.

34.     As used by the Defendant, the words, terms and name "TO KILL A MOCKINGBIRD" and "HARPER LEE" are identical to or confusingly similar to the Plaintiff's marks and names.

35.     It is commonplace for authors and publishers of books to sell or to license their marks in connection with the sale of tangible goods, such as clothing, bags, towels, linens, magnets, memo pads, ornaments, glass ware, plastic/acrylic tumbler glasses, seat cushions, car decals, coasters, bookmarks, teacher's instructional guides, fans, postcards and beverage huggers.  Accordingly, it was likely that, when Defendant began its use of the words, terms and name "TO KILL A MOCKINGBIRD" and "HARPER LEE," long after Plaintiff's marks and names had become famous, that the Plaintiff was already likely to enter those fields.

36.     Upon information and belief, Defendant selected and uses the TO KILL A MOCKINGBIRD and HARPER LEE marks and names with knowledge of Plaintiff's TO KILL A MOCKINGBIRD and HARPER LEE marks and names, and the valuable goodwill and business reputation associated therewith, with intent to confuse, mislead and deceive the public into believing Defendant's goods come from Plaintiff or are in some manner associated with or endorsed by Plaintiff.

37.     The Defendant's use of the words, terms and names "TO KILL A MOCKINGBIRD" and "HARPER LEE" is likely to cause confusion among the relevant public and trade.

38.     The Defendant's use of the words, terms and name "TO KILL A MOCKINGBIRD" and "HARPER LEE" is likely to cause mistake among the relevant public and trade.

39.     The Defendant's use of the words, terms and name "TO KILL A MOCKINGBIRD" and "HARPER LEE" is likely to deceive the relevant public and trade as to the affiliation, connection, or association of Defendant with the Plaintiff.

40.     The Defendant's use of the words, terms and name "TO KILL A MOCKINGBIRD" and "HARPER LEE" is likely to deceive the relevant public and trade as to origin sponsorship or approval of Defendant's goods and services.

41.     Defendant has deliberately and willfully used the TO KILL A MOCKINGBIRD and HARPER LEE marks and names to trade upon the reputation and goodwill that Plaintiff has established in the TO KILL A MOCKINGBIRD and HARPER LEE marks and names.

42.     By continuing to offer its goods using the words, terms and names "TO KILL A MOCKINGBIRD" and "HARPER LEE," Defendant is palming off

11

its goods as emanating from or being endorsed by Plaintiff, thereby enhancing the commercial value and reputation of Defendant's goods.

### D.   Defendant's Bad Faith.

43.   The Defendant's bad faith in adopting and using the words, terms and names at issue is demonstrated by its actions before a pending Opposition proceeding in the Trademark Trials and Appeals Board of the United States Patent and Trademark Office (the "Board") captioned *Monroe County Heritage Museum v. Nelle Harper Lee* (Opp. No. 91212081), in which the Museum has opposed Plaintiff's application for federal registration of her trademark in TO KILL A MOCKINGBIRD.  In its Opposition, Defendant knowingly withheld material information from the Board that it had made material statements to Plaintiff and to third parties that are inconsistent with the Defendant's claim of senior rights in the mark TO KILL A MOCKINGBIRD.  Defendant intimidated an unrelated third-party news organization with the prospect of baseless legal action for having reported accurately, in an article concerning that very opposition proceeding, that Defendant has refused to pay Plaintiff any royalty or other compensation for Defendant's sale of merchandise bearing the mark TO KILL A MOCKINGBIRD.

44.   In truth, the Defendant has repeatedly acknowledged that its rights are inferior to those of Plaintiff, both by its words and its acts.

12

45.     When the facts in the Opposition proceeding became public, the case generated considerable public interest.  The international wire service Reuters reported on September 21, 2013, that "the museum [Defendant] said it did not believe she [Nelle Harper Lee] was entitled to share in the profits from the sale of the merchandise."  Defendant's counsel demanded a correction from Reuters, stating in an email that "the museum has never said that, and in fact would be happy to talk to Ms. Lee about this matter."  Reuters then published what it stated was a "corrected" news item which, in Reuters' words, "corrects characterization of museum's trademark application [sic] in paragraph 5 to make clear that museum is not refusing to share profits with Lee."  The correction was incorrect, as Defendant's counsel knew, because he had explicitly and in writing refused to pay any royalty to Plaintiff for Defendant's TO KILL A MOCKINGBIRD merchandise sales, or to buy authorized TO KILL A MOCKINGBIRD merchandise from Applicant.  In correspondence dated June 6, 2013, Defendant's counsel demanded a "royalty-free" license as condition of not opposing Ms. Lee's application for registration of her trademark and on August 1, 2013 refused Ms. Lee's offer to sell authorized merchandise to Defendant.  The Defendant steadfastly refused, saying that "the museum is not going to purchase its TKAM merchandise from Ms. Lee"; it falsely denied this behavior when asked about it by the press.

46.     Over the years, the Defendant's infringing actions have grown more brazen.  In the past, when Ms. Lee's health was better, the Defendant responded grudgingly but compliantly with demands to cease and desist from infringing activity.  For example, the Defendant once published a "Calpurnia's Cook Book" that traded upon a fictional character created by Ms. Lee.  The Defendant withdrew the publication after a cease-and-desist demand.  In other instances, the Defendant created other To Kill A Mockingbird-themed trinkets, and relented when Ms. Lee objected.  In short, the Defendant's usual practice has been to ask forgiveness, rather than ask permission.

47.     Now, though, things are different.  Ms. Lee suffered a stroke and is in ill health.  The Defendant apparently believes that she lacks the desire to police her trademarks, and therefore seeks to take advantage of Ms. Lee's condition and property.  The Defendant is mistaken.

**E.     Continuing Wrong.**

48.     The Plaintiff has demanded that the Defendant cease and desist from its infringing use, and the Defendant has refused to do so.  Indeed, the Defendant has made clear its intention to continue its infringing uses by filing an opposition to Plaintiff's application for registration of the TO KILL A MOCKINGBIRD mark on the Principal Register of the United States Trademark Office.  Therefore, unless

14

restrained by this Court, Defendant will continue to compete unfairly with Plaintiff and confuse, mislead and deceive the public by using such marks.

49.    By its wrongful acts, Defendant, unless restrained by this Court, will cause serious and irreparable damage to Plaintiff and the goodwill associated with Plaintiff's business.  These wrongful acts will cause grave injury to the public as well.  Plaintiff has no adequate remedy at law.

## FIRST CAUSE OF ACTION

50.    Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 49, inclusive, as if set forth fully herein.

51.    The Defendant's actions constitute use in commerce of a word, term, name or device and false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection or association of Defendant with Plaintiff or as to the origin, sponsorship, or approval of the Defendant's goods and services in violation of 15 U.S.C. § 1125(a).

52.    Plaintiff has been damaged by the Defendant's actions, and is likely to continue to be damaged in the future.

53.    By virtue of the foregoing, Plaintiff is entitled to damages in an amount to be proved at trial, an injunction restraining future violations and an award of her attorney's fees.

## SECOND CAUSE OF ACTION

54.    Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 49 as if set forth fully herein.

55.    The Defendant's use of the TO KILL A MOCKINGBIRD mark has diluted and will likely dilute the TO KILL A MOCKINGBIRD mark by blurring.

56.    Defendant's use of the TO KILL A MOCKINGBIRD mark has diluted and will likely dilute the TO KILL A MOCKINGBIRD mark by tarnishment.

57.    The Defendant's use of the HARPER LEE mark has diluted and will likely dilute the HARPER LEE mark by blurring.

58.    Defendant's use of the HARPER LEE mark has diluted and will likely dilute the HARPER LEE mark by tarnishment.

59.    The Defendant's actions constitute use in commerce of a word, term, name or device which is likely to dilute the distinctive quality of the famous TO KILL A MOCKINGBIRD and HARPER LEE marks and names in violation of 15 U.S.C. § 1125(c).

60.    Plaintiff has been damaged by the Defendant's actions, and is likely to continue to be damaged in the future.

16

61.     By virtue of the foregoing, Plaintiff is entitled to damages in an amount to be proved at trial, an injunction restraining future violations and an award of her attorney's fees.

## THIRD CAUSE OF ACTION

62.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 49 as if set forth fully herein.

63.     The Defendant registered, traffics in and uses the domain name tokillamockingbird.com.

64.     The Plaintiff's TO KILL A MOCKINGBIRD mark was both famous and distinctive before the tokillamockingbird.com domain was registered.

65.     The domain name tokillamockingbird.com is confusingly similar to and dilutive of Plaintiff's TO KILL A MOCKINGBIRD mark.

66.     The Defendant had a bad faith intent to profit from the Plaintiff's TO KILL A MOCKINGBIRD mark.

67.     The Defendant's actions violate 15 U.S.C. § 1125(d).

68.     Plaintiff has been damaged by the Defendant's actions, and is likely to continue to be damaged in the future.

69.     By virtue of the foregoing, Plaintiff is entitled to damages in an amount to be proved at trial, an injunction restraining future violations, forfeiture of the domain name tokillamockingbird.com, and an award of her attorney's fees.

## FOURTH CAUSE OF ACTION

70.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 49 as if set forth fully herein.

71.     The Defendant has used reproductions of Plaintiff's registered TO KILL A MOCKINGBIRD mark in connection with the sale of goods in Alabama.

72.     The Defendant's use of reproductions of Plaintiff's registered TO KILL A MOCKINGBIRD mark is likely to cause confusion as to the source of origin of such goods.

73.     The Defendant's use of reproductions of Plaintiff's registered TO KILL A MOCKINGBIRD mark is likely to cause mistake as to the source of origin of such goods.

74.     The Defendant's use of reproductions of Plaintiff's registered TO KILL A MOCKINGBIRD mark is likely to deceive as to the source of origin of such goods.

75.     The Defendant's use of reproductions of Plaintiff's registered TO KILL A MOCKINGBIRD mark is likely to cause confusion as to the sponsorship of such goods.

76.     The Defendant's use of reproductions of Plaintiff's registered TO KILL A MOCKINGBIRD mark is likely to cause mistake as to sponsorship of such goods.

77.     The Defendant's use of reproductions of Plaintiff's registered TO KILL A MOCKINGBIRD mark is likely to deceive as to the sponsorship of such goods.

78.     The foregoing acts constitute a violation of Ala. Code. § 8-12-16(1).

79.     Plaintiff has been injured in the course of her business as a result of the Defendant's actions, and is likely to continue to be injured in the future.

80.     By virtue of the foregoing, Plaintiff is entitled to profits and damages in an amount to be proved at trial, trebled pursuant to Ala. Code § 8-12-18(b), an injunction restraining future violations, and an award of her attorney's fees.

## FIFTH CAUSE OF ACTION

81.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 49 as if set forth fully herein.

82.     Plaintiff's registered TO KILL A MOCKINGBIRD mark and her unregistered HARPER LEE mark are both famous and distinctive.

83.     Defendant's uses of the TO KILL A MOCKINGBIRD and HARPER LEE marks are likely to dilute Plaintiff's marks.

84.     Plaintiff has been injured in the course of its business as a result of the Defendant's actions, and is likely to continue to be injured in the future.

85.     The foregoing acts constitute a violation of Ala. Code. § 8-12-17.

86.     By virtue of the foregoing, Plaintiff is entitled to profits and damages in an amount to be proved at trial, trebled pursuant to Ala. Code § 8-12-18(b), an injunction restraining future violations, and an award of her attorney's fees.

## SIXTH CAUSE OF ACTION

87.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 50, inclusive, as if set forth fully herein.

88.     The Defendant's actions constitute unlawful and/or unfair acts, and therefore constitute an unfair method of competition in violation of the common law of the State of Alabama.

89.     The Defendant's actions constitute passing off its goods and services as those of Plaintiff and a false representation that its goods are affiliated with or sponsored by Plaintiff, when in fact they are not, and therefore constitute an unfair method of competition in violation of the common law of the State of Alabama.

90.     Plaintiff has been damaged by the Defendant's actions, and is likely to continue to be damaged in the future.

91.     By virtue of the foregoing, Plaintiff is entitled to damages in an amount to be proved at trial, and an injunction restraining future violations.

## SEVENTH CAUSE OF ACTION

92.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 49 as if set forth fully herein.

93.    The Defendant's actions constitute trademark infringement in violation of the common law of the State of Alabama.

94.    Plaintiff has been damaged by the Defendant's actions, and is likely to continue to be damaged in the future.

95.    By virtue of the foregoing, Plaintiff is entitled to damages in an amount to be proved at trial, and an injunction restraining future violations.

## EIGHTH CAUSE OF ACTION

96.    Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 49 as if set forth fully herein.

97.    Plaintiff is the sole source of her marks and names.

98.    Plaintiff had a reasonable expectation that she would be compensated in money for any use of her marks and names.

99.    By attaching Plaintiff's TO KILL A MOCKINGBIRD mark to its own goods, Defendant accepted and retained the benefits associated with such use.

100.   As a result of the foregoing, the Defendant has been unjustly enriched and should not, in equity and good conscience, be permitted to retain the benefits of that enrichment.

101.   Plaintiff is entitled to disgorgement from Defendant of the benefits that it has unjustly retained, in an amount to be proved at trial.

## NINTH CAUSE OF ACTION

102.   Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 49 as if set forth fully herein.

103.   By using without Plaintiff's permission her professional name "Harper Lee," an indicia of and associated with Plaintiff's personality, the Defendant has appropriated to itself elements of Plaintiff's personality for commercial gain in violation of the common law of the State of Alabama.

104.   Plaintiff has been damaged by the Defendant's actions, and is likely to continue to be damaged in the future.

105.   By virtue of the foregoing, Plaintiff is entitled to damages in an amount to be proved at trial, and an injunction restraining future violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered as follows:

1.   That Defendant, its directors, officers, agents, employees, licensees, affiliates, members, any parent and subsidiary companies, attorneys and representatives and all those in privity with or acting under their direction and/or pursuant to their control, be permanently enjoined and restrained from directly or indirectly:

22

(a)     Using the names or marks TO KILL A MOCKINGBIRD and HARPER LEE, or marks confusingly similar to the TO KILL A MOCKINGBIRD and HARPER LEE names and marks;

(b)     Performing any acts or using any service marks, trademarks, names, words or phrases that are likely to cause confusion, to cause mistake, to deceive or otherwise mislead the trade or public into believing that any of the Plaintiff and Defendant are one and the same or are in some way connected or that Defendant is in some manner affiliated or associated with or under the supervision or control of or licensed by Plaintiff or that services or goods of Defendant originate with Plaintiff or are likely to lead the trade or public to associate Defendant with Plaintiff;

(c)     Using any service marks, trademarks or trade names or engaging in any other conduct that creates a likelihood of injury to the business reputation of Plaintiff or a likelihood of misappropriation and dilution of the distinctive TO KILL A MOCKINGBIRD and HARPER LEE names and marks and the goodwill associated therewith; and

(d)     Using any trade practice whatsoever, including those complained of herein, which tends to unfairly compete with or injure Plaintiff, its business and the goodwill appertaining thereto;

2.     That Defendant, its officers, directors, agents, employees, licensees, affiliates, members, any parent and subsidiary companies, attorneys and representatives and all those in privity with or acting under their direction and/or pursuant to their control, be required to deliver up for destruction all merchandise, labels, signs, cartons, tags, boxes, papers, statements, invoices, advertising, promotional and any other materials bearing the infringing marks together with all plates, molds, matrices, and other means and materials for making and reproducing the same;

3.     That Defendant be required to pay to Plaintiff compensatory damages for the injury sustained by Plaintiff, trebled pursuant to statute;

4.     That Defendant be required to account to Plaintiff for any and all gains, profits and advantages derived by it from the activities complained of herein, trebled pursuant to statute;

5.     That Defendant be required to pay to Plaintiff the cost of this action, together with her reasonable attorney's fees; and

6.     That Plaintiff have such other and further relief as this Court shall deem just and proper on the merits.


/s/ A. Clay Rankin, III
A. Clay Rankin, III        (RANKA5493)
Norman M. Stockman      (STOCN9440)
Attorneys for Plaintiff Nelle Harper Lee

24

OF COUNSEL:

HAND ARENDALL LLC
P.O. Box 123
Mobile, Alabama 36601
Tel:    (251) 432-5511
Fax:   (251) 694-6375
Email:  crankin@handarendall.com
            nstockman@handarendall.com


Robert W. Clarida (to be moved for admission *pro hac vice*)
Craig J. Albert (to be moved for admission *pro hac vice*)
REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th Floor
New York, New York 10022
Tel:    (212) 209-3044
Fax:   (212) 371-5500
Email:  rclarida@reitlerlaw.com
            calbert@reitlerlaw.com


**Defendant to be served by private process server**