## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| NELLE HARPER LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 1:13-cv-00490 |
| | ) |
| MONROE COUNTY HERITAGE | ) |
| MUSEUM, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF LAW IN RESPONSE TO
## DEFENDANT'S MOTION TO DISMISS

Plaintiff Nelle Harper Lee ("Miss Lee") respectfully submits this Memorandum of Law in response to Defendant's Motion to Dismiss dated November 5, 2013. [Doc. 11].  For the reasons set forth below, the motion should be denied.  To the extent that Defendant's motion is granted in whole or in part, Miss Lee respectfully requests leave to amend her Complaint to address any ambiguities or omissions that may be of concern to the Court.

### PRELIMINARY STATEMENT

Nelle Harper Lee, professionally known to millions of readers around the world as Harper Lee, is the author of *To Kill A Mockingbird*, one of the best-selling and best-loved novels of all time.  Seeking to capitalize on the undisputed fame of Miss Lee and the novel, Defendant has made extensive unauthorized commercial use of the trademark TO KILL A MOCKINGBIRD and Miss Lee's professional name, HARPER LEE, including use in advertising and promotion and on commercial merchandise sold in Defendant's gift shop.  Miss Lee has demanded that Defendant cease and desist.  Defendant has ignored Miss Lee's demands, forcing Miss Lee to seek relief in this Court.

## FACTS

The relevant facts are set forth in the Complaint [Doc. 1] and must be taken as true for purposes of resolving this motion to dismiss under Rule 12(b)(6).   Unsupported factual allegations set forth only in Defendant's Memorandum of Law may not be considered by this Court.

## ARGUMENT

### I.     12(b)(6) STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003).   Plaintiff's allegations must be taken as true.  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (citation omitted)).

The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). See also *Caribbean I Owners' Association, Inc. v. Great American Ins. Co. of New York*, 619 F. Supp. 2d 1178, 1182 (S.D. Ala. 2008).

The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson,* 551 U.S. at 93 (quoting *Twombly,* 550 U.S. at 555). Thus, the proper test is whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."

2

*Financial Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1282-83 (11th Cir. 2007) (citation and internal quotations omitted).

## II.  DEFENDANT'S AFFIRMATIVE DEFENSES ARE NOT PROPERLY BEFORE THE COURT IN THIS MOTION

Defendant has submitted a motion purporting to seek dismissal of Miss Lee's complaint under Fed. R. Civ. P. 12(b)(6).   Defendant's motion consists almost entirely of asserted affirmative defenses. These defenses are unrelated to or contradicted by the factual allegations of the Complaint and are not supported by evidence or authority.   These affirmative defenses (laches, statute of limitations, waiver, acquiescence, implied consent, fair use, the First Amendment, license) all require Defendant to come forward with evidence to satisfy its pleading burden.   For this reason, affirmative defenses are seldom properly considered by a court in resolving a motion under Rule 12(b)(6).  See *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) (*"*Generally, the existence of an affirmative defense will not support a motion to dismiss."). *See also Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930 (7th Cir. 2012) (dismissal appropriate only when plaintiff's complaint "sets out *all* the elements of an affirmative defense") (emphasis added).

The necessary elements of Defendant's affirmative defenses (which Defendant does not enumerate) are not established by the allegations of Miss Lee's Complaint, and Defendant has failed to offer admissible evidence of all the facts necessary to establish these defenses.  The few factual allegations that Defendant makes in its brief [Doc. 11], *e.g.* at 7 ("Plaintiff has visited the Defendant's museum without making a single objection"), 9 ("Plaintiff has not been injured"), 13 ("Defendant believed and had reasonable grounds to believe that the use of the domain name was a fair use"), 17 (Defendant's use "is lawful and permissible by Defendant as an authorized licensee of the rights of production and performance to the play TO KILL A MOCKINGBIRD"),

3

are all unsupported by citations to the record and disputed by Miss Lee; they cannot be inferred from the face of the Complaint.  Accordingly, none of the asserted affirmative defenses provide a basis for this Court to dismiss this action.

### III.   TITLES OF SINGLE LITERARY WORKS ARE ELIGIBLE FOR FEDERAL TRADEMARK PROTECTION

Defendant also asserts as a matter of law that Miss Lee cannot claim federally protectable rights under the Lanham Act for TO KILL A MOCKINGBIRD because it is "a single book." Def. Mem., at 8-9 [Doc. 11].  Defendant is mistaken. It is well-settled that the title of a single creative work, such as a book, can be protected under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a). That is the section Miss Lee invokes here.

In *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 267-69 (5th Cir. 1999), the Fifth Circuit rejected the precise argument Defendant makes in this case.  There, plaintiff authored a 1995 diet book entitled "SUGAR BUSTERS! Cut Sugar to Trim Fat."  Under the Lanham Act, plaintiff sought to enjoin a competing book, "SUGAR BUST For Life!"  The district court granted a preliminary injunction. On appeal defendant argued, *inter alia*, that "plaintiff's unfair competition claims under § 43(a) of the Lanham Act fail because that section cannot protect a single book title." *Id.* at 264.

The Fifth Circuit rejected the argument and explained that although the title of a single creative work cannot be *registered* as a trademark on the Principal Register of the U.S. Patent and Trademark Office, and thus cannot be protected under § 32 of the Lanham Act, "[t]he Supreme Court has recognized that § 43(a) prohibits a broader range of practices than does § 32 . . . and that § 43(a) protects qualifying unregistered marks." *Id.* at 267 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (internal quotations omitted).    The Court noted that even *In re Cooper*, 254 F.2d 611 (CCPA 1958), a case upon which Defendant here relies

(Doc. 11, at  9), recognized over a half-century ago that "it is well known that the rights in book titles are afforded appropriate protection under the law of unfair competition." *Sugar Busters*, 177 F.3d at 269 (quoting *In re Cooper*, 254 F.2d at 617).

Specifically with regard to the title of a single book, the *Sugar Busters* court stated that under § 43(a) "a title may be protected as a common law trademark if two elements are satisfied: the title has acquired 'secondary meaning,' and the allegedly infringing use of the title creates a substantial likelihood of confusion." *Id.* (quoting *Trapani v. CBS Records, Inc.*, 857 F.2d 1475, No. 87-6034, 1998 WL 92438, at *3 (6th Cir. Sept. 2, 1988)). Miss Lee plausibly alleges both elements in her Complaint.  The likelihood of confusion allegations are discussed in detail below at section IV.A.  "Secondary meaning" requires a showing that "the title is sufficiently well known that consumers associate it with a particular author's work," as shown by evidence such as "the length and manner of use of the mark, the nature and extent of advertising and promotion of a mark, the sales volume of the product, and instances of actual confusion." *Id.* at 269.  Miss Lee plausibly alleged facts tending to support a finding of secondary meaning under these factors.  See, *e.g.*, Complaint at ¶¶ 1, 13-16, 20, 23-25.    Indeed, the plaintiff in *Sugar Busters* was entitled to a remand for fact finding on the secondary meaning issue even though it enjoyed far less success, for a much shorter time, than Miss Lee has enjoyed with TO KILL A MOCKINGBIRD: sales of 210,000 copies over a thirty-month period between 1995 and 1998. *Id.* at 270.

Accordingly, Defendant is incorrect as a matter of law when it asserts that "the title of a single book is not the subject of federal trademark protection." Def. Mem. at 8.   Miss Lee is entitled to her day in court to establish that TO KILL A MOCKINGBIRD has acquired secondary meaning and is thus eligible for protection under § 43(a) of the Lanham Act.

## IV.   PLAINTIFF HAS SUFFICIENTLY ALLEGED EACH CAUSE OF ACTION

The Complaint alleges nine causes of action: federal unfair competition under 15 U.S.C. 1125(a); federal trademark dilution under 15 U.S.C. 1125(c); federal cybersquatting under 15 U.S.C. 1125(d); infringement of a registered Alabama trademark under Alabama Code 8-12-16(1); dilution of a registered Alabama trademark under Alabama Code 8-12-17; common law passing off; common law trademark infringement; unjust enrichment; and unauthorized commercial use of Miss Lee's name and personality.  Each cause of action is supported by direct or inferential factual allegations sufficient to give defendant fair notice of the claim and to state a facially plausible claim to relief, under a viable legal theory.

### A.   First Cause of Action

The first cause of action alleged in the Complaint is for federal unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. 1125(a). Under section 43(a) "a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techplosion, inc.*,  261 F.3d 1188, 1193 (11th Cir. 2001) citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997).

Federal trademark registration is not required.  Id. at 1193 ("Section 43(a) of the Lanham Act forbids unfair trade practices involving infringement of trade dress, service marks, or trademarks, even in the absence of federal trademark registration") citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753 (1992). See also *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC,*702 F.3d 1312, 1317(11th Cir. 2012).

To establish a prima facie case, "a plaintiff need only demonstrate "(1) that it has trademark rights in the mark or name at issue … and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods [or services] created by the defendant's use of the … name…." *Ono's Trading Company, LLC, v. Parnell,* 2006 U.S. Dist. LEXIS 60247 (S.D. Ala. 2006) at *10, citing *Conagra Inc. v. Singleton,* 743 F.2d 1508, 1512 (11th Cir. 1984); *see also Ferrellgas Ptnrs., L.P. v. Barrow,* 143 Fed. Appx. 180, 186 (11th Cir. 2005); *Planetary Motion. Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 (11th Cir. 2001).

Miss Lee has plausibly alleged facts sufficient to establish both elements. She has alleged exclusive ownership of trademark rights in the marks TO KILL A MOCKINGBBIRD (hereafter "TKAM") and in her professional name, HARPER LEE. See Complaint at ¶¶ 13-16, 1-21, 22. Defendant repeatedly asserts that Miss Lee has no prior rights in TKAM, see Def. Memo at 8-9. This assertion is incorrect as a matter of law, as set forth in Section III, *supra*.

Accordingly, there is at the very least a disputed issue of fact as to this issue, which dispute cannot be resolved against Miss Lee on this motion.

Miss Lee has also plausibly alleged a likelihood of confusion.  This Court considers the following non-exclusive list of factors in analyzing the likelihood of confusion under the Lanham Act:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods, i.e., retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion.*Conagra. Inc. v. Singleton,* 743 F.2d 1508, 1514 (11th Cir. 1984) (citations omitted).

*Ono's Trading*, *supra*, at *11-12.

This Court in *Ono's Trading* emphasized that "The factors are not rigidly weighed and are merely a guide for the Court to focus on the basic question: likelihood of confusion," citing *Montana Professional Sports. LLC v. Leisure Sports Management. Inc.,* 422 F.Supp.2d 1271, 1278 (M.D. Fla. Feb. 7, 2006)(citing *University of Ga. Athletic Ass'n v. Lake*, 756 F.2d 1535, 1542 (11th Cir. 1985)).

Here, the Complaint alleges facts sufficient to support a finding in Miss Lee's favor on virtually all of these factors, clearly raising at least a plausible claim to relief:

        **1.**      **Strength of the mark**

        ¶¶ 13-14, 15-16, 23-25, 26-28   (TKAM and HARPER LEE are world-famous marks).

        **2.**      **Similarity between the marks**

        ¶¶ 32-34 (the Defendant's marks are identical to Miss Lee's).

        **3.**      **Similarity between the products offered**

Defendant confirms, Def. Mem. at ¶8, that it sells Miss Lee's own book in its gift shop, and it also sells other items often sold by book publishers, see Complaint ¶ ¶ 33, 35.  The products sold by the respective parties need not be the same in order to weigh in favor of a likelihood of confusion, but merely be of a kind that the public would associate with a single source. *See Frehling Enters. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1338 (11th Cir. 1999) ("This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties.").

### 4.      Similarity of the sales methods

It is well-settled that "[d]issimilarities between the retail outlets for and the predominant customers of plaintiffs and defendant's goods lessen the possibility of confusion, mistake, or deception." *Frehling Enterprises, supra,* 192 F.3d at 1339 (citation omitted).  Here, there are no dissimilarities as to the predominant customers: Defendant's goods are marketed to the readers of Miss Lee's famous novel; Defendant itself concedes the point with its own advertisements, see Complaint ¶32. Moreover, there are no apparent or actual differences as to retail outlets, because Defendant's gift shop sells Miss Lee's book.

### 5.      Similarity of advertising methods

Here, Defendant has not advertised "in a way that accentuated the differences between the [parties' goods]" and thus defendant's "advertising methods have not decreased the likelihood of confusion."  See *Ono's Trading, supra* at *16.  To the contrary, Defendant has frequently emphasized the link between itself, Miss Lee, and the book "To Kill a Mockingbird," see Complaint ¶ 32.

### 6.      Defendant's intent

"If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Ono's Trading* at *17, citing *Frehling Enterprises,* 192 F.3d at 1340 (citation omitted).  Here, Miss Lee alleges that Defendant's intent was to trade on and derive a commercial benefit from the fame and goodwill of Miss Lee's world-famous novel, "To Kill A Mockingbird" by selling merchandise bearing the TKAM mark. Defendant's own promotional statements amply support this allegation, see Complaint ¶ 32, rendering it at least "plausible" for purposes of this motion.

### 7.     Actual confusion

There is as yet no factual record in this case, and there has been no discovery into instances of actual confusion, but such evidence is not required to establish a likelihood of confusion. *John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 978 (11th Cir. 1983) ("evidence of actual confusion is not necessary to a finding of likelihood of confusion"). It is therefore not incumbent on Miss Lee to present that evidence at this time.  However, Miss Lee intends and expects to come forward with evidence, including affidavits and survey evidence where appropriate, that third parties are in fact often confused as to whether Miss Lee authorized the Museum to sell its TKAM merchandise and otherwise exploit the  TKAM mark and Miss Lee's name.

In sum, under Miss Lee's first cause of action, she has plausibly alleged (a) that she owns valid prior rights in TKAM and HARPER LEE, and (b) that there is a likelihood of confusion arising from Defendant's unauthorized use of these marks, sufficient to satisfy the minimal pleading requirements of Fed. R. Civ. Pro. 8(a)(2) and to place the Defendant on fair notice of "what the claim is and the ground on which it rests." *Twombly*, 127 S.Ct. at 1964.  No more is required.

### B.     Second Cause of Action

Plaintiff's second cause of action is for federal trademark dilution under the Federal Trademark Dilution Act, codified at section 43(c) of the Lanham Act, 15 U.S.C. 1125(c). Under the Federal Trademark Dilution Act, "'[d]ilution' is defined as 'the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of

confusion mistake or deception.'" *Alfa Corp. v. Alfa Mortgage Inc.,* 560 F. Supp. 2d 1166, 1176 (M.D. Ala. 2008*) citing Alltel Corp. v. Actel Integrated Commc'n, Inc.* 42 F. Supp. 2d 1265, 1273 (S.D. Ala. 1999) (quoting *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1326 (9th Cir. 1998) (quoting 15 U.S.C. § 1127)).[1]

To succeed on a trademark dilution claim, a plaintiff must prove "(1) its mark is famous; (2) the defendant adopted its mark after the plaintiff's mark became famous; (3) the defendant's mark diluted the plaintiff's mark; and (4) the defendant's use is commercial and in commerce." *Alfa Corp.* at 1176, citing *Carnival Corp. v. Seaescape Casino Cruises, Inc.,* 74 F. Supp. 2d 1261 (S.D. Fla. 1999) (citing *Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d 633 (7th Cir. 1999); *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868 (9th Cir. 1999); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev*., 170 F.3d 449, 452 (4th Cir. 1999), cert. denied, 528 U.S. 923, 120 S. Ct. 286, 145 L. Ed. 2d 239 (1999)); see also 15 U.S.C. § 1125(c).

Here, Miss Lee plausibly alleges facts in support of each element of this claim. First, she alleges that her TKAM and HARPER LEE marks are famous. See Complaint ¶14-15, also see Defendant's own statements, Complaint ¶32. Further, assuming *arguendo* that Defendant had not itself conceded that TKAM and HARPER LEE are famous, Miss Lee has alleged facts sufficient to establish that these marks are famous. As the Middle District of Alabama noted in *Alfa Corp.*, the nonexclusive list of factors a court may consider to determine whether a mark is famous and, therefore, deserving of protection from dilution, include: (1) the degree of inherent

---

[1] As the Eleventh Circuit explained in *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,* 889 F.2d 1018 (11th Cir. 1989), an infringement action is based on the likelihood of consumer confusion between suppliers of competing goods in the same geographic area. *Id.* at 1024. A dilution action, in contrast, is based on the concept that a strong trademark has value beyond its ability to distinguish a good or service's source. *Id.* A dilution action protects the owners of such strong, distinctive marks from the diminution of consumer goodwill by competitors or non-competitors. *Id.*

or acquired distinctiveness; (2) the duration and extent of use of the mark; (3) the duration and extent of advertising and publicity; (4) the geographical extent of the area in which the mark is used; (5) the channels of trade in which the mark is used; (6) the degree of recognition of the mark in the areas and channels of trade used by the owner and the entity allegedly diluting the mark; and (7) the nature and extent of use of the same or similar marks by third parties; and (8) whether the mark  [*1177]  is registered on the principal register. 15 U.S.C. § 1125(c)(1).  *Alfa Corp.*, supra, at 1176-1177.

Here, Miss Lee has alleged that the TKAM and HARPER LEE marks have acquired a high degree of distinctiveness (Complaint, ¶¶ 22-25, 26-28); have been in nationwide and international use since 1960, *i.e.,* over half a century (Complaint, ¶13); that the marks are widely recognized by the relevant consuming public (Complaint, ¶¶ 14, 23, 26); and that Miss Lee's use of the marks has been substantially exclusive, with no other third parties making use of any colorable imitations of these marks  (Complaint, ¶ 22).  Thus, the Complaint plausibly alleges that the TKAM and HARPER LEE marks are famous for purposes of the FTDA.

The Complaint further alleges, directly or inferentially, that the Defendant's marks were adopted *after* Miss Lee's marks had become famous, see, *e.g.*, Complaint paragraphs ¶¶29, 32, see also Def. Mem. at 5 (Defendant commenced use in 1995); that Defendant's use of the marks dilutes the distinctiveness of Miss Lee's marks (Complaint ¶22); that Miss Lee's use was substantially exclusive prior to Defendant (Complaint ¶ 22); and that Defendant's use of both marks is commercial in nature  (Complaint ¶¶29-33).

### C.    Third Cause of Action

The third cause of action alleged in the Complaint is for violation of the federal Anti-Cybersquatting Protection Act ("ACPA"), codified at 15 U.S.C. 1125(d):

"Under the ACPA, a person commits cybersquatting, if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that—

> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>
> (III) is a [protected] trademark, word, or name. .

*Maus v. Ennis*, 513 F. Appx. 872, 880,  2013 U.S. App. LEXIS 5468 (11th Cir. 2013).

The Complaint alleges the following facts that plausibly support the conclusion that the elements of an ACPA claim have been satisfied:

1.    ¶ 31: Defendant registered domain name ToKillAMockingbird.com

2.    ¶ 34: Defendant's domain name is identical to Miss Lee's mark

3.    ¶¶ 29-32, 36, 41: Defendant had bad faith intent to profit.

**D.    Fourth Cause of Action**

The fourth cause of action alleged in the Complaint is for infringement of a trademark registered in the State of Alabama, in violation of Ala. Code 8-12-16(1). The Code provides:

any person who shall:

**(1)**    Use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this article in connection with a business, or with the sale, offering for sale, or advertising of any goods or services, and such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services or the sponsorship of such business. . .

shall be liable to a civil action by the owner of such registered mark.

13

The Complaint alleges the following facts that plausibly support the conclusion that these elements have been satisfied:

1.    ¶19: Miss Lee has a registered trademark in Alabama for TO KILL A MOCKINGBIRD

2.    ¶ 34: Defendant used an identical mark

3.    ¶¶ 29-33:  Defendant's use was in commerce, including the sale of goods

See section IV.A., supra, showing that Defendant's use is likely to cause confusion.

### E.    Fifth Cause of Action

The fifth cause of action alleged in the Complaint is for dilution of a famous trademark registered in the State of Alabama, in violation of Ala. Code 8-12-17.  The Code provides:

**§ 8-12-17.  Dilution of distinctive quality; grounds for injunctive relief.**

(a) Subject to the principles of equity, the owner of a mark which is famous and distinctive, inherently or through acquired distinctiveness, in this state shall be entitled to an injunction against another person's commercial use of a mark, if such use begins after the famous mark has become famous and is likely to cause dilution of the famous mark, and to obtain such other relief as is provided in this section.

(b) A mark is famous if it is widely recognized by the general consuming public of this state or a significant geographic area in this state as a designation of source of the goods or services or the business of the mark's owner. In determining whether a mark is famous, a court may consider factors such as, but not limited to:

(1) The duration, extent, and geographic reach of advertising and publicity of the mark in this state, whether advertised or publicized by the owner or third parties.

(2) The amount, volume, and geographic extent of sales offered under the mark in this state.

(3) The extent of actual recognition of the mark in this state or a significant geographic area in this state.

(4) Whether the mark is the subject of a state registration in this state, or a federal registration under the Act of March 3, 1881, or under the Act of February 20, 1905, or on the principal register

under the Trademark Act of 1946, as amended.

As the Middle District of Alabama recognized in *Alfa Corp.*, supra at 1175-76, "the plaintiff's burden of proof for dilution under § 8-12-17 . . . [i]s essentially the same as under federal law." citing *EBSCO Indus., Inc. v. LMN Enterprises,* 89 F. Supp. 2d 1248, 1264 (N.D. Ala. 2000). Accordingly, Miss Lee's Complaint properly alleges a violation of Ala. Code 8-12-17 for the reasons set forth above at section IV. B.

### F.   Sixth Cause of Action

Plaintiff's sixth cause of action is for the tort of passing off, a form of unfair competition prohibited by Alabama common law. As the U.S. Supreme Court explained in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23; 123 S. Ct. 2041, 2045 (2003), "[p]assing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's," quoted in *Suntree Technologies, Inc. v. Ecosense Int'l Inc.*, 693 F.3d 1338, 1347 (11th Cir. 2012); see also *Try-Me Bottling Co., Inc. v. Teaver*, 241 Ala. 266; 2 So. 2d 611 (Ala. 1941) (recognizing passing-off tort under Alabama common law).[2]

The Complaint alleges the following facts that plausibly support the conclusion that these elements have been satisfied: ¶¶19-20, 22-28 (Miss Lee owns prior rights in TO KILL A MOCKINGBIRD and HARPER LEE); ¶¶ 29-33 (Defendant represents its merchandise as Miss Lee's by explicitly referencing Miss Lee's book and film in its promotional materials, offering customers a "tangible connection" to Miss Lee's book).

---

[2]  *See also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763; 112 S. Ct. 2753, 2762, n.5 (1992)("The common-law tort of passing off has been described as follows: 'Beginning in about 1803, English and American common law slowly developed an offshoot of the tort of fraud and deceit and called it 'passing off' or 'palming off.' Simply stated, passing off as a tort consists of one passing off his goods as the goods of another. In 1842 Lord Langdale wrote: 'I think that the principle on which both the courts of law and equity proceed is very well understood. A man is not to sell his own goods under the pretence that they are the goods of another man. . . .'")

#### G.     Seventh Cause of Action

The seventh cause of action alleged in the Complaint is for trademark infringement under the common law of the State of Alabama. "[T]he test for the state-law infringement claim under Alabama common law is same as it is under the Lanham Act," *Alfa Corp., supra,* citing *Arthur Young, Inc. v. Arthur Young & Co*., 579 F. Supp. 384, 389 (N.D. Ala. 1983).  Accordingly, Miss Lee's Complaint properly alleges a claim for trademark infringement under Alabama common law for the reasons set forth above at section IV.A. (regarding Lanham Act claim under 15 U.S.C. 1125(a)).

#### H.     Eighth Cause of Action

The eighth cause of action alleged in the Complaint is for unjust enrichment, as prohibited by Alabama common law. The Eleventh Circuit has held that "[u]njust enrichment occurs when an infringer has 'enriched themselves by tapping the reputation and good will of [the infringed]'," *Optimum Technologies, Inc., v. Home Depot U.S.A., Inc.*, 217 Fed. Appx. 899, 903 (11th Cir. 2007); citing *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1521 n.9 (11th Cir. 1990)(applying Alabama law: "the defendants both injured Howard Johnson by imitating its trademark without compensation and enriched themselves by tapping the reputation and good will of Howard Johnson through this imitation. The district court's royalty award remedies the defendants' colorable imitation of the plaintiff's trademark without compensation while the profit award remedies the impermissible gains made by the defendants' exploitation of the Howard Johnson mark through its imitation.")

The Northern District of Alabama has held that

Under Alabama law, "[t]he essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud."*Hancock-*

> *Hazlett Gen. Constr. Co. v. Trane Co.,* 499 So. 2d 1385, 1387 (Ala. 1986)
> (emphasis omitted).  The legal doctrine of unjust enrichment 'is an old equitable
> remedy permitting the court in equity and good conscience to disallow one to be
> unjustly enriched at the expense of another.' *Battles v. Atchison,* 545 So. 2d 814,
> 815 (Ala. 1989).

*Nimbus Technologies, Inc., v. Sunndata Products, Inc.,*2005 U.S. Dist. LEXIS 46508 at *57-58

(N.D. Ala. 2005).

The Complaint alleges facts that plausibly support the conclusion that these elements

have been satisfied, including without limitation the following: ¶¶ 29-33 (Defendant made

money by selling merchandise under Miss Lee's marks); ¶ 5 (Defendant had no permission); ¶

45 (Defendant refused to pay Miss Lee). These facts are sufficient to state a claim for relief for

unjust enrichment.

## I.    Ninth Cause of Action

The ninth cause of action alleged in the Complaint is for Defendant's unauthorized

commercial exploitation of Miss Lee's name, in violation of Alabama common law.   The

exclusive right to exploit one's name for commercial purposes has been recognized by the

Alabama Supreme Court and by the Eleventh Circuit applying Alabama law, as set forth in

*Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1446 (11th Cir.1998):

> Alabama, like most states, has recognized that the invasion of privacy tort consists
> of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or
> seclusion; 2) publicity which violates the ordinary decencies; 3) putting the
> plaintiff in a false, but not necessarily defamatory, position in the public eye; and
> 4) the appropriation of some element of the plaintiff's personality for a
> commercial use.*Phillips v. Smalley Maintenance Services, Inc.,* 435 So. 2d 705,
> 708 (Ala.1983); *cf. Smith*[*v. Doss,* 251 Ala. 250]*,* 37 So. 2d at 120 (1948)
> (defining the common-law right of privacy as "the right of a person to be free
> from unwarranted publicity or the unwarranted appropriation or exploitation of
> one's personality . . . ")

The *Allison* court continued,

> [W]e read Alabama law to permit a cause of action for invasion of privacy when the defendant appropriates without consent the "plaintiff's name or likeness to advertise the defendant's business or product, or for some other similar commercial purpose." *Kyser-Smith*[*v. Upscale Communications, Inc.*]*,* 873 F. Supp. 1519, 1525(M.D. Ala. 1995). The plaintiff must demonstrate that there is a "unique quality or value in [his] likeness[]" that, if appropriated, would result in "commercial profit" to the defendant.

*Allison,* 136 F.3d at 1447.

The Complaint alleges the following facts that plausibly support the conclusion that these elements have been satisfied:  ¶ 13 (Miss Lee is a world-famous author); ¶15 (Miss Lee is the recipient of the Presidential Medal of Freedom, the nation's highest civilian honor); ¶ 26 (Miss Lee's professional name, Harper Lee, is widely recognized); ¶ 27 (the name Harper Lee is highly distinctive); ¶ (the name Harper Lee has developed exceedingly valuable goodwill); ¶¶ 30-32 (Defendants have used Miss Lee's professional name, without her consent, to advertise and promote the Museum and the sale of merchandise in the Museum gift shop).

### J.    Count-By-Count Summary

As set forth in more detail above, Miss Lee has alleged facts sufficient to establish each of the nine causes of action set forth in her Complaint. Defendant's motion is without basis in fact or law and should be denied in all respects.

### V.    IN THE ALTERNATIVE, MISS LEE SHOULD BE GRANTED LEAVE TO AMEND HER COMPLAINT

When a motion to dismiss is granted in whole or in part, leave to amend is freely given under Fed. R. Civ. P. 15(a)(2).  The Eleventh Circuit has held that "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Kaloe Shipping Co. Ltd. v. Goltens Service Company, Inc.*, 315 Fed. Appx. 877, 879 (11th Cir. 2009), quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988).  See also *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (Former 5th Cir. 1981) (district court's

discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed.R.Civ.P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'") Where it appears a more carefully drafted complaint might state a claim upon which relief can be granted, the Eleventh Circuit has held that a district court should give a plaintiff an opportunity to amend a deficient complaint instead of dismissing it. *See Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985); *Dussouy*, 660 F.2d at 597-99.

Here, there has been no discovery to develop the factual record and Miss Lee has not previously sought or been granted leave to amend her Complaint. Accordingly, this Court should grant leave to amend to the extent Defendant cannot show that amendment would be futile.

### CONCLUSION

Based on the above reasons and authorities, Defendant's motion to dismiss the Complaint should be denied. To the extent that Defendant's motion is granted in whole or in part, Plaintiff respectfully requests leave to amend her Complaint to address any ambiguities or omissions that may be of concern to the Court.

<div style="margin-left:40%">

Respectfully submitted,

/s/ A. Clay Rankin, III
A. Clay Rankin, III    (RANKA5493)
Norman M. Stockman (STOCN9440)
HAND ARENDALL LLC
P.O. Box 123
Mobile, Alabama 36601
Tel:   (251) 432-5511
Fax:   (251) 694-6375
Email:  crankin@handarendall.com
        nstockman@handarendall.com

</div>

Robert W. Clarida
Craig Albert
REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th Floor
New York, New York 10022

Tel:     (212) 209-3044
Fax:     (212) 371-5500
Email:  rclarida@reitlerlaw.com
          calbert@reitlerlaw.com

## CERTIFICATE OF SERVICE

I certify that on December 17, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Sam David Knight (sdknight@gattorney.com)
Matthew I. Goforth (mgoforth@gattorney.com)
George R. Irvine (gri@sgclaw.com)
Samuel N. Crosby (snc@sgclaw.com)

/s/ A. Clay Rankin, III

20