IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NELLE HARPER LEE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No.: 1:13-cv-490** |
| | ) | |
| MONROE COUNTY HERITAGE | ) | |
| MUSEUM, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S MEMORNADUM OF LAW IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Defendant Monroe County Heritage Museum, Inc. respectfully submits this Memorandum of Law in Reply to Plaintiff's Response to Defendant's Motion to Dismiss. For the reasons set forth herein and in Defendant's Memorandum of Law in support of Defendant's Motion to Dismiss, Plaintiff's claims should be dismissed in their entirety.

### INTRODUCTION

The Plaintiff's Preliminary Statement [Doc. 22] contains allegations which are disputed by Defendant, but which are also entirely irrelevant to the Motion to Dismiss before this Court; thus they should not be a barrier to the granting of Defendant's Motion to Dismiss.

## I.      12(b)(6) STANDARD

Defendant reasserts the standards set forth in Defendant's Motion to Dismiss, including the requirement that to survive a motion to dismiss, the Complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," and in this circuit, that has been interpreted to mean that the facts pled in the Complaint must be sufficient to show the plausibility of entitlement to relief, **without the need for further factual enhancement**.  See *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (emphasis added). Plaintiff's allegations in this case fall short of this requirement, as discussed in further detail in Plaintiff's Motion to Dismiss.

## II.     Affirmative Defenses Are Proper Grounds for Dismissal in a 12(b)(6) Motion

Plaintiff's Response is incorrect that affirmative defenses are not properly raised in a 12(b)(6) motion, and that they "all require Defendant to come forward with evidence to satisfy its pleading burden" (Plaintiff's Response at p.3).  To the contrary, many affirmative defenses, such as those raised by Defendant in this case, may be judged based upon the face of the complaint. See *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

The case cited by Plaintiff in her Response makes clear that "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the

complaint." *Id.* (See, e.g., *Concordia v. Bendekovic*, 693 F.2d 1073 (11th Cir.1982) (party may raise affirmative defense of res judicata by 12(b)(6) motion when defense's existence may be judged on face of complaint); *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 n. 6 (5th Cir.1977) (defense of statute of limitations may appear on face of complaint)).

In *Mann v. Adams Realty Co.*, Inc. the court held that "[a] Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense." *Mann*, 556 F.2d 288 at 293.  The court referred to the guidance of 5 C. Wright & A. Miller, Federal Practice and Procedure s 1357 at page 608, which states: "A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading. Since … averments of time [are] material, the inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim." *Id.*

This analysis should be equally applicable to each of the affirmative defenses raised by Defendant in the Motion to Dismiss, the existence of which are made clear by Plaintiff's own allegations.

In addition to those references cited in Defendant's Motion to Dismiss, these specific references to the Complaint (which is attached Exhibit 1 to Defendant's

Motion to Dismiss) are relevant to Defendant's affirmative defense grounds for its
Motion to Dismiss:

A. Complaint, Paragraph 46. "**Over the years**, the Defendant's infringing actions
   have grown more brazen." (Emphasis added).

B. Complaint, Paragraph 17. "The Plaintiff's TO KILL A MOCKINGBIRD mark
   was both famous and distinctive **before the tokillamockingbird.com domain
   was registered**." (Emphasis added) (The date of domain name registration is
   generally publicly available, and Plaintiff's averment is evidence that Plaintiff
   is well-aware of the date of that domain name registration (January 20, 1998)).

C. Complaint, Paragraph 46. "For example, the Defendant **once published** a
   'Calpurnia's Cook Book' that traded upon a fictional character created by Ms.
   Lee." (This instance occurred fourteen (14) years ago).

D. Complaint, Paragraph 46. "In **other instances**, the Defendant created other To
   Kill A Mockingbird-themed trinkets, and relented when Ms. Lee objected."
   (Though Defendant denies such instances occurred, these instances occurred, if
   at all, at least more than four (4) years ago).

While these references may appear minor at first glance, the allegations in the
Complaint refer to dated events and to the passage of long periods of time.  They also
illustrate the long amount of time that has passed (nearly two decades) since the
Defendant first began use of *To Kill A Mockingbird* and *Harper Lee* in connection
with its historical preservation and literary arts activities within Monroe County.
Principals of equity should require that Plaintiff not be permitted to take advantage of
these incidents as factual support for her allegations, yet not be burdened by the fact
that these events occurred a **very long time ago**.

As described in *Mann*, "the inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim." 556 F.2d 288 at 293. Here, the references by Plaintiff in the Complaint to easily dated incidents and events are ample evidence to "indicate that the action is untimely," that Plaintiff has slumbered on her rights to the prejudice of Defendant, and that Defendant's Motion to Dismiss for failure to state a claim is due to be granted. See *Id.*

To the extent this Court is reluctant to grant Defendant's Motion to Dismiss in its entirety, the Defendant, in the alternative, respectfully requests the Court to grant Defendant's Motion to Dismiss based on the statute of limitations with respect to all activities and actions of Defendant which occurred outside of the applicable statute of limitations period for each of the causes of action raised in the Complaint.

## III.   The Federal Trademark Protection Afforded to Single Book Titles Does Not Afford the Protection Plaintiff Claims

While Defendant does not dispute there is some legal authority from other circuits that finds that the title of a single creative work, such as a book, can be protected under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a) (which section is invoked by the Plaintiff in the Complaint), even where such protection has been afforded, it has been very limited in scope. Additionally, the scope of protection, if any, afforded to the titles of single books in the Eleventh Circuit has not yet been decided in a decision legally binding upon this Court.

*Sugar Busters LLC v. Brennan*, 177 F.3d 258 (5th Cir. 1999) is the primary decision cited by Plaintiff as its legal support for the position that the book title *To Kill A Mockingbird* is entitled to legal protection as a trademark. However, this decision's own discussion of the rights afforded to single book titles highlights just how limited those rights must be, stating:   "If the title of such a single work has acquired secondary meaning, 'the holder of the rights to that title may prevent the use of the same or confusingly similar **titles by other authors**.'" *Sugar Busters*, 177 F.3d at 269 (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir.1989))(citing *Trapani v. CBS Records, Inc.*, 857 F.2d 1475, No. 87–6034, 1988 WL 92438 at *3 (6th Cir. Sept. 2, 1988) (unpublished opinion))(Emphasis added).

The *Sugar Busters* court further limited this scope of protection by noting that "[a]ny finding that defendants' book title is likely to cause confusion with plaintiff's book title must be "particularly compelling" to outweigh defendants' First Amendment interest in choosing an appropriate book title for their work." *Id.* at FN7 (citing *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir.1993); *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F.Supp. 279, 296 (S.D.N.Y.1997); *No Fear, Inc. v. Imagine Films, Inc.*, 930 F.Supp. 1381, 1382–84 (C.D.Cal.1995)).

The Plaintiff in this case has cited no legal authority that suggests the author of a single book is entitled to such a broad scope of protection as what is claimed by

Plaintiff under Section 43(a) of the Lanham Act.   Under Plaintiff's misguided interpretation, Section 43(a) of the Lanham Act allows an author to prohibit the sale of any and all goods which bear words or slogans the same as or similar to the title of the author's book, regardless of whether the author has ever made commercial trademark use of the wording.  This is simply not the law under the Lanham Act.

Further, the legal authority from other circuits cited by Plaintiff indicates that only limited protection under Section 43(a) is provided to the **titles** of single books; Plaintiff has provided no legal basis for the proposition that Section 43(a) of the Lanham Act entitles the authors of books to legally prevent use by others of the **author's name**, particularly when used in legitimate reference to the author and her work (as opposed to use of the author's name in selling and promoting a competing book, which has NOT been alleged in this case).

Under the legal authority cited by Plaintiff in the Response to Defendant's Motion to Dismiss, the Plaintiff's scope of protection, if any, afforded to *To Kill A Mockingbird* under Section 43(a) of the Lanham Act should be limited to restricting, in appropriate cases, other **authors** from publishing books under a **title the same as or similar to the Plaintiff's book title**. See *Sugar Busters*, 177 F.3d at 269.

The Plaintiff has not alleged in the Complaint that Defendant is selling, has sold, or has any intention of selling in the future, a competing book under a title the same as or similar to *To Kill A Mockingbird* or *Harper Lee*. The  Plaintiff  has  also

quite conspicuously failed to allege that she has ever sold a single good or service under the wording *To Kill A Mockingbird* or *Harper Lee* when used in a trademark manner, other than use as the title of a single book by that name (or as the author's name).

The Defendant reasserts its position that Plaintiff has failed to meet her burden under Rule 12(b)(6) to state a claim upon which relief may be granted, as the Complaint does not include any assertions that could give rise to any legitimate claim that Plaintiff owns rights in *To Kill A Mockingbird* or *Harper Lee* as a trademark for use in connection with gift shop merchandise and related goods such as those rightfully sold by Defendant.

## IV.   PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED EACH CAUSE OF ACTION

As set forth in detail in Defendant's Motion to Dismiss, Plaintiff has failed to meet the requirements to show the plausibility of entitlement to relief, without the need for further factual enhancement.  Even when presuming all of the allegations of the Complaint as true, the Plaintiff has failed to allege any facts showing Plaintiff has ever made a single sale of any good or product under the phrase *To Kill A Mockingbird* or *Harper Lee* when used in a trademark manner.  The sole use that Plaintiff alleges of the phrase is as the title of a single novel by that name. As discussed above, the trademark protection afforded to titles of books, if any, in this Circuit should be limited in scope to prevent the sale of other books under the same or

8

similar title; and Plaintiff has not alleged that Defendant is selling, has sold, or has any intention of selling in the future, a competing book under a title the same as or similar to *To Kill A Mockingbird* or *Harper Lee*.

In her Response Plaintiff engages in a lengthy discussion of the factors that support a finding of likelihood of confusion (Response, p. 8 – 10), and also provides further discussion of each cause of action raised in the Complaint.  While Defendant disputes the arguments set forth in the Response, for the reasons discussed above, those arguments do not cure the failure of the Complaint to state a claim upon which relief may be granted.

Defendant refers the Court to its Motion to Dismiss and Memorandum in support thereof for Defendant's discussion of each cause of action of the Complaint and its short-comings.

With respect to the Third Cause of Action, for violation of the federal Anti-Cybersquatting Protection Act, 15 U.S.C. 1125(d),  Defendant re-emphasizes that Plaintiff's statement that "Defendant had bad faith intent to profit" (see p. 13 of Response) is merely speculative and without support from any factual allegation in the Complaint. Rather, the Complaint supports a finding that Defendant lacked bad faith, and Plaintiff has not set forth a single allegation of behavior that would be evidence of bad faith by the Defendant.

There are numerous legitimate connections between the Defendant, on the one hand, Monroeville, Monroe County (the Museum is a county-owned no-profit), Harper Lee, and the *To Kill A Mockingbird* novel, on the other.  These connections are recited throughout the Complaint. For example:

> Prologue, paragraph 2: "Monroeville (the county seat of Monroe County, Alabama) is Harper Lee's home."; "the Old County Courthouse [where the Defendant's gift shop is located]…was the setting for the dramatic trial in *To Kill A Mockingbird*.";

> Prologue, paragraph 3: "The lightly-populated, rural county is also home to the [Defendant].").

The connections between the Defendant, Harper Lee and her novel, Monroeville, Monroe County and the Old County Courthouse provide ample evidence that Defendant "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." See 15 U.S.C. 1525(d)(1)(B)(ii). The statute prohibits a finding of bad faith intent in any case where such a determination can be found, as is the case here. See *Id.*

The Anti-Cybersquatting Protection Act was not intended to be used as a weapon against legitimate users of domain names, such as Defendant in this case.

## SUMMARY

Each of Plaintiff's causes of action rests upon a determination that Plaintiff owns enforceable trademark rights in the title *To Kill A Mockingbird* and/or in her personal name *Harper Lee*, which rights are so broad in scope as to prohibit use of

those terms by others across a wide variety of products (e.g., broader than the scope of rights in the case law cited by Plaintiff which allows an author of a book with a title that has obtained secondary meaning to stop another author from selling a book under a confusingly similar title). The scope of protection being claimed by Plaintiff here is leaps and bounds beyond what has been decided in the legal authority cited by Plaintiff.

Plaintiff has failed to allege any trademark use by Plaintiff of the nature that would give rise to such a broad scope of rights. The only use alleged by Plaintiff is use of *To Kill a Mockingbird* as the title of a single book, and of *Harper Lee* as the author of that book. Plaintiff has not claimed to have ever sold a single good or product (other than Plaintiff's novel) under either of these names.

In contrast, Defendant, with the full knowledge of Plaintiff, has for 18 years operated a gift shop in the Old Courthouse Museum (made famous by the movie *To Kill A Mockingbird* starring Greggory Peck), just blocks away from Plaintiff's primary residence.  The Complaint affirms that Plaintiff has been aware of Defendant's activities for years, but has slumbered on any rights she may have had related to Defendant's activities.

## CONCLUSION

Based upon the foregoing, and as discussed in detail in Defendant's Motion to Dismiss, each and every one of the Plaintiff's claims in her Complaint fails to state a claim upon which relief may be granted.

WHEREFORE, premises considered Defendant requests that the Court dismiss the Plaintiff's Complaint in its entirety.

Respectfully submitted,


*/s/ Sam David Knight*
SAM DAVID KNIGHT (ASB-1745-N62S)
MATT GOFORTH (ASB-5672-A41G)
*Attorneys for Defendant*


**OF COUNSEL:**
GORDON, DANA, KNIGHT & GILMORE, LLC
600 University Park Place
Suite 100
Birmingham, Alabama 35209
Telephone: (205) 874-7950
Facsimile:  (205) 874-7960
sdknight@gattorney.com
mgoforth@gattorney.com


*/s/ George Irvine*
GEORGE IRVINE (ASB-4725-I33G)
SAMUEL CROSBY (ASB-7504-B49S)
*Attorneys for Defendant*

George Irvine
Samuel Crosby
Stone Granade & Crosby, PC
7133 Stone Dr
Daphne, AL 36526-4825
Telephone: (251) 626-6696
Facsimile: (251) 626-2617
gri@sgclaw.com
snc@sgclaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this has been served upon the following by United States mail, first class postage prepaid and properly addressed, by facsimile or by Electronic Filing, on this the 21st day of January, 2014.

A. Clay Rankin, III
Norman M. Stockman
HAND ARENDALL LLC
P.O. Box 123
Mobile, Alabama 36601
Telephone: (251) 432-5511
Facsimile: (251) 694-6375
crankin@handarendall.com
nstockman@handarendall.com

Robert W. Clarida
Craig J. Albert
REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 209-3044
Facsimile: (212) 371-5500
rclarida@reitlerlaw.com
calbert@reitlerlaw.com

_/s/ Sam David Knight_____
OF COUNSEL